Barbara Lynn VINCENT, Appellee,

v.

Donald L. SUTHERLAND; Clara Fern Smith; Dale Fields; Margaret Ann Sell; Billy Fields; Betty Peaslee and Janet Pantle McCall, Appellants.

No. 60132.

Court of Appeals, State of Oklahoma, Division No. 4.

Aug. 28, 1984.

Rehearing Denied Sept. 21, 1984.

Certiorari Denied Nov. 27, 1984.

Released for Publication by Order of Court of Appeals Nov. 29, 1984.

Charles W. Wolfe, Billings, Wolfe & Billings, Woodward, for appellee.

F. Lovell McMillin, S. Brent Bahner, Fischl, Culp, McMillin, Kern, Chaffin & Long, Ardmore, for appellants.

BRIGHTMIRE, Judge.

In order to receive a larger share of an estate, the appealing defendants want us to hold that a person born to an unwed mother is not the child of that woman. But we cannot do it. Reality, reason, fairness and the federal constitution prevent it. To the contrary, we affirm the trial court's rational decision to the effect that when a woman gives birth to a human being, both a natural and legal relationship of mother and child is created—regardless of whether the mother is or ever was married—and such child has the same inalienable rights as any other child born in this country.

## I

This dispute is between seven connubial children of Lena R. Whitehurst Fields and an eighth offspring who was begotten at a time when Ms. Fields' legal status was that of an unmarried person.

Probably nothing more than mental anguish would have been experienced by the innocent victim of the societal taboo had her grandfather, William O. Whitehurst, not executed a will on December 8, 1952—some three and a half years after plaintiff Barbara Lynn Vincent was born. In it the testator gave his estate to his only child, Lena R. Fields, to have and hold as long as she lived "and that upon her death, the real estate and so much of the personal property as she may have remaining, except income therefrom, shall descend to and become the property of her living children ... the grandchildren of the testator."[1]

The grandfather died October 21, 1959 and his estate was distributed to Lena Fields.

To comprehend the foundation for this lawsuit, it is necessary at this point to leaf back through the pages of time for some additional facts.

For many years plaintiff's mother was married to George Jet Sutherland. During the nuptial union several children were born, only four of whom survived infancy. In time the Sutherlands' relationship deteriorated and in 1946 they were divorced. Their friendship, however, may have continued with at least intermittent intimacy because on March 12, 1949, the spouseless

---

1. Actually this was a joint will by both parents of Lena Fields. Her mother, Elizabeth Whitehurst, predeceased her father and thus it was at his death that subject will became operative.

Lena Sutherland gave birth to plaintiff, Barbara Lynn Sutherland and, according to the newborn's birth certificate, the mother named George Jet Sutherland as the man who sired the infant.

Some three months later Lena Sutherland consented to the adoption of the baby girl by her cousin, Earnest Parkins and his wife Emma. Lena later married W.L. Fields and bore him three more children. This brought the total of Lena's living children to eight at the time of her death on October 30, 1982. In the meanwhile plaintiff married and became Barbara Vincent.

This action was filed by Barbara Vincent on November 1, 1982, against her seven brothers and sisters to establish and quiet title to an undivided ⅛th interest in the remainder of her grandfather's estate.

Defendants filed an answer offering as their principal defense a legal conclusion to the effect that plaintiff was not a child of her mother within the meaning of her grandfather's will because of certain surrealistic conceptual fictions created by ancient Anglo-Saxon common law and by the language of an intestate succession statute on the books at the time of the grandfather's death—84 O.S.1951, § 215—a statute dealing with the heirship of an "illegitimate" child.[2]

Secondarily defendants rely on a judicial determination of heirship made in connection with the probate of the grandfather's will which defendants allege did not include plaintiff—a defense that can be disposed of instanter by stating that such determination is not binding on plaintiff because she received no notice of and was not a party to that proceeding.

Following the taking of several depositions and completion of other discovery procedures, it became clear that there was no significant controversy concerning the fact that Lena gave birth to plaintiff or, for that matter, any other material fact. Consequently plaintiff moved for a summary judgment, and a short time later defendants did too. Each party concedes the absence of a factual conflict but contends the legal defenses they raised entitled them to judgment.

On April 11, 1983, the trial court concluded as a matter of law that plaintiff, being one of Lena Whitehurst's eight living children at the time of the latter's death, was entitled to one-eighth of what remained of her grandfather's estate and granted plaintiff the relief she sought including a partition of the surface rights in the inherited lands.

Defendants appeal.

## II

Defendants' single proposition is that "the illegitimacy of the plaintiff precludes her inclusion in the class of 'living children' and 'grandchildren' entitled to take under the ... will ... of William O. Whitehurst."

■ To ask us to treat a non-connubial child as it was treated by the English common law is akin to urging us to treat women as the English common law treated them—as chattel—for at common law the rights of a non-connubial person were "very few, being only such as he can *acquire;* for he can *inherit* nothing, being looked upon as the son of nobody, and sometimes called *filius nullius* (the son of no one), sometimes *filius populi* (the son of the people)."[3] Defendants' argument is even more incredible in light of the considerable progress that has been made to date in throwing off the medieval chains of discrimination of all kinds originally wrought through legal fiction and maintained by force of law.

The very idea of tarnishing the innocence of a new born miracle of creation with the descriptive term "illegitimate" is an ecclesi-

[2] Social progress was made in 1977 when this anachronistic law of 1910 vintage was in effect repealed by passage of a superseding amendment which revamped § 215 completely. The new statute eliminates the old statute's inheritance discrimination against a non-connubial child and places the latter on the same heirship footing with a connubial child.

[3] 1 Blackstone, Commentaries on the Laws of England 655 (1915). (Emphasis is the author's)

astical anachronism that is generally recognized today as an anathema. Fortunately, both the denigrating appellation as well as lingering diminution of the rights of one born to a single woman have for the most part been statutorily abolished or judicially declared to be an unconstitutional deprivation of equal protection of the laws.[4] Indeed, it might be said that plaintiff was born twenty-five years too soon, for in 1974 a sensible law was enacted decreeing that "On and after the date this act becomes operative, all children born within the State of Oklahoma shall be legitimate." [5]

Such law makes sense. If a conception involved some kind of wrong it would have to have been on the part of the parents and not the child. In most states, unlike in English days of yore, mating singles are guilty of no legal wrongdoing. Certainly, public interest is not served by a state's attempt to regulate or influence actions of men and women by imposing sanctions on children born of a relationship not conforming to social norms. To do so is as illogical as it is unjust. And we have no reason to believe that in preparing his will, plaintiff's grandfather thought illogically or intended to be unjust.

We, therefore, decline to construe plaintiff out of her inheritance. We particularly turn down defendants' invitation to place analogous reliance on the inheritance provisions of pre-1977 § 215, because we think the statute unconstitutionally discriminated against a non-connubial child.

Affirmed.

DeMIER, P.J., and STUBBLEFIELD, J., concur.

---

**4.** 1977 Okla.Sess.Laws, ch. 36, § 1 (now codified at 84 O.S.1981 § 215); 1974 Okla.Sess.Laws, ch. 297, § 7 (now codified at 10 O.S.1981 § 1.1); *Trimble v. Gordon,* 430 U.S. 762, 765–66, 97 S.Ct. 1459, 1461–62, 52 L.Ed.2d 31 (1977), holding that "statutory discrimination against illegitimate children is unconstitutional" in that it "violates the Equal Protection Clause of the Fourteenth Amendment."

**5.** 10 O.S.1981 § 1.2.